IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

STEPHON SUMPTER-BEY, )
)
    Plaintiff, )
)
)
v. ) No. 3:11-cv-0130
) Judge Trauger
SHERIFF SONNY WEATHERFORD, ) Magistrate Judge Brown
SONYA TROUTT, KEN CANTER and )
JACK BABBITT, )
)
    Defendants. )
)

To: The Honorable Aleta A. Trauger

## REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 28). Defendant has filed a Memorandum in support of this Motion. (Docket Entry 29). Plaintiff's filing entitled "1983 Civil Suit" is being treated as a response to Defendant's Motion ("Resp."). (Docket Entry 31). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion be **GRANTED** and this action be **DISMISSED.**

1

# I. INTRODUCTION AND FACTUAL BACKGROUND[1]

Plaintiff filed this civil suit *pro se in forma pauperis* under 42 U.S.C. § 1983 against Sonny Weatherford, Sonya Troutt, Ken Canter,[2] and Jack Babbitt (together, "Defendants"), all employees of the Sumner County Jail in Gallatin, Tennessee. (Docket Entry 1). Plaintiff, an "American Muslim," alleges that Defendants violated his First Amendment rights by restricting his free exercise of religion, promoting the establishment of the Christian religion, and retaliating when Plaintiff made use of the jail's grievance system. (Docket Entries 1, 15, 31).[3]

Plaintiff is an inmate who was confined at the Sumner County Jail in Gallatin, Tennessee when the actions that gave rise to this lawsuit took place. (Compl. at 2). Plaintiff alleges that on November 21, 2010, Mr. Rick Wade, a representative of the "Seven Day Adventist Church of God" in Portland, Tennessee, began preaching in the day room of Plaintiff's pod. (Statement of Facts ("Stmt.") at 2). Mr. Wade's preaching could be heard over every activity taking place in the day room, where inmates were playing cards, dominoes, chess, or just sitting around talking. (*Id.*). Plaintiff filed a grievance on November 22, 2010, claiming that he found the preaching "offensive and discriminating against non-Christians" and wondering why clergy of other faiths never visited the jail. (*Id.*). Doug Canter responded on November 24, 2010, informing Plaintiff

---

[1] All factual allegations are taken as true from Plaintiff's Complaint (Docket Entry 1), Statement of Facts (Docket Entry 15), and response (Docket Entry 31). While the Statement of Facts (Docket Entry 15) was not filed contemporaneously with the Complaint, the Magistrate Judge considers it part of Plaintiff's Complaint.

[2] "Ken Canter" is not an employee of the Sumner County Jail. In its Motion to Dismiss, Defendants assume that Plaintiff meant to sue Doug Canter, who is an employee at the jail, and Defendant's attorney has accepted service on his behalf. (Docket Entry 28).

[3] Plaintiff's complaint does not specify these specific claims but merely claims that Defendants have violated Plaintiff's "civil rights" and "First Amendment." (Statement of Facts at 1, Resp. at 1). In light of Plaintiff's *pro se* status, the Court construes these claims liberally.

that preachers and other religious representatives visit on a strictly volunteer basis and that a representative from Plaintiff's faith would be afforded the same opportunity. (*Id.* at 3). Canter told Plaintiff that he could ignore Mr. Wade preaching, go to his cell and shut the door, or listen to music with headphones if he did not wish to listen. (*Id.*).

Plaintiff filed a second grievance on December 11, 2010, alleging that Mr. Wade again began preaching and praying in the middle of the day room. (*Id.* at 4). Sonya Troutt[4] responded on December 14, 2010, reiterating that the preachers are volunteers who have requested to bring religious services to "inmates who volunteer to participate." (*Id.*). Troutt asserted that the volunteers are not sought out by the jail staff. (*Id.*). Troutt also asserted that the jail staff advises the volunteer preachers that they are "never to impose on inmates who are not interested." (*Id.* at 5). Troutt informed Plaintiff that the only resolution would be for him to be reclassified to a pod with "one on one interaction on a volunteer basis" or go to his cell if he does not wish to participate. (*Id.*).

Plaintiff filed a third grievance on December 14, 2010, alleging that he was called into Troutt's office that morning and that Troutt and Jack Babbitt threatened to have him reclassified to the segregation unit of the jail if he filed another grievance concerning the religious services. (*Id.* at 6).

Plaintiff was transferred to the West Tennessee State Penitentiary in Henning, Tennessee, on March 9, 2011. (Docket Entry 7).[5]

---

[4]Jail documents and Plaintiff's complaint spell the name "Trout," but the Court will defer to the spelling in the official record.

[5]So far as the record is developed, it appears the transfer is unrelated to the matters in this lawsuit.

## II. LEGAL ANALYSIS

A.      Standard of Review on Motion to Dismiss

When evaluating a defendant's motion to dismiss under Rule 12(b)(6), a district court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true, as the moving party bears the burden of proving that no claim exists. *Erickson v. Pardus*, 550 U.S. 89, 89 (2007). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The district court need not treat as true "bare assertions or legal conclusions" and must evaluate the remaining factual allegations to determine if they are sufficient to "raise the right to relief above the speculative level." *Id.* Only claims that cross the line from possibility to plausibility are sufficient to state a claim. *Id.* This does not require a district judge to conduct an inquiry into the probability that the claim will succeed or that the facts are indeed true, but instead it simply calls for enough facts to raise a "reasonable expectation" that discovery will reveal evidence of the alleged illegal conduct. *Id.* at 545. When the non-conclusory facts suggest two possible conclusions, one of which is alleged by the complaint but the other of which is more plausible, a court may dismiss the complaint for failing to cross the plausibility line. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52 (2009). The court need not review the claim for its probability success but rather should determine whether the alleged facts allow a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

B.      Plaintiff's Free Exercise Clause Claims

The Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. Amend. I. The second of these clauses, the Free Exercise Clause, "withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion." *Sch. Dist. v. Schempp*, 374 U.S. 203, 222-23 (1963). In a case challenging free exercise of religion, a plaintiff must show "the coercive effect of the enactment as it operates against him in the practice of his religion." *Id.*

Several Sixth Circuit cases have denied prisoner challenges on Free Exercise Clause grounds. In *Thompson v. Kentucky*, the plaintiff prisoner brought a Free Exercise claim as well as an equal protection claim challenging the prison's allocation of its chapel: Christian services were allotted 23 ½ hours of chapel per week while Islamic services were allotted only 6 ½ hours per week. 712 F.2d 1078, 1078 (6th Cir. 1983). The Sixth Circuit held that the Free Exercise Clause does not guarantee "equal exercise of religion," nor does it require prisons to provide a Muslim leader at state expense. *Id.* at 1080. Similarly, in *Colvin v. Caruso*, the Sixth Circuit held that a prison did not violate the Free Exercise Clause by reasonably failing to provide Jewish services: Colvin was the only inmate requesting them, Jewish books were plentiful in the prison library, and the prison did not restrict his ability to practice Judaism privately or read Jewish literature. 605 F.3d 282, 282 (6th Cir. 2010).

Nothing in the record suggests that the Sumner County Jail has restricted Plaintiff from practicing Islam. The prison's failure to provide Islamic services could be viewed as reasonable under *Colvin* if Plaintiff is the only prisoner requesting them. 605 F.3d at 282. More favorable to the jail, however, is the assertion that it did not *provide* Christian services but merely *welcomed* them. (Stmt. at 4). Even so, the Free Exercise Clause does not require the jail to provide Muslim

5

services equal to its Christian services or a Muslim religious leader at the jail's expense. *Colvin,* 605 F.3d at 1080. Furthermore, Plaintiff does not assert that the jail prohibited him from reading literature related to his faith, practicing his religion privately, or even soliciting visiting preachers for one-on-one prayer sessions. Simply put, Plaintiff's assertions fall far short of stating a violation of the Free Exercise Clause.

C.     Plaintiff's Establishment Clause Claims

As the leading case at the Supreme Court has interpreted the Establishment Clause – the first clause of the First Amendment – neither the federal government nor any state can set up a church, pass laws favoring religion, force an individual to go to church, levy a tax to support religious institutions, or participate in the affairs of any religious organizations or groups. *Everson v. Bd. of Educ.*, 330 U.S. 1, 15 (1947). "Establishment," to the writers of the First Amendment, was thought to "connote[] sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Comm'n*, 397 U.S. 664, 668 (1970). The First Amendment does not require the state to actively denounce religion, but rather to remain neutral in its relations with groups of religious believers and nonbelievers. *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir. 2001) (*citing Everson*, 330 U.S. at 18). The Establishment Clause and the Free Exercise Clause are meant to function in harmony. *Id.*

In *Ha'min v. Lewis*, this Court denied a prisoner's Establishment Clause challenge brought on by the prison's failure to allow a Muslim religious leader to preach in the prison. 440 F. Supp. 2d 715, 715 (M.D. Tenn. 2006). Despite the fact that the prison lent out Christian Bibles to inmates and did not lend copies of the Quran, this Court denied the claim because the bibles were donated and the prison represented that it would lend out copies of the Quran if they were

6

so donated. *Id.* at 717. Furthermore, Ha'min was allowed to keep his personal copy of the Quran in his cell, ultimately leading this Court to rule that the prison "did not promote one religion over another." *Id.* (reasoning that the denial of the Muslim minister's access to the prison was for legitimate penological concerns under *Turner v. Safley*).

Taking Plaintiff's allegations as true, the evidence in the record clearly suggests that the Sumner County Jail neither endorses the Christian faith, forces any prisoners to listen to Christian sermons, seeks out Christian ministers, pays for Christian services, nor is otherwise actively involved in promoting Christianity in the jail. Simply put, Plaintiff was not forced to participate in or listen to Mr. Wade's sermons; the fact that he would have had to return to his cell instead of remaining in the day room is more of a minor annoyance than a constitutional violation. The facts at bar are quite similar to *Ha'min*: the jail made it quite clear that Muslim ministers in addition to Christian ones were more than welcome to preach in the jail, but none had yet come forward to volunteer. There is no evidence that the jail removed any religious artifacts from Plaintiff's possession or otherwise promoted Christianity over his proclaimed Islamic faith. The jail was not required to dismiss Christian volunteers at the prison gate just because religious leaders of other faiths did not step forward. Unfortunately for Plaintiff, no Muslim religious leader has yet volunteered. *See Johnson*, 241 F.3d at 509.

Plaintiff cites the Seventh Circuit decision of *Kerr v. Farrey* to support his Establishment Clause claim. 95 F.3d 472, 472 (7th Cir. 1996). While Plaintiff is correct that the Establishment Clause "protects prisoners from forced participation in religious activities," the facts of this case are markedly different from *Kerr*. (Resp. at 1 (internal quotation marks omitted)). In *Kerr*, the plaintiff was forced to attend Narcotics Anonymous meetings – whose twelve steps were clearly

7

"based on the monotheistic idea of a single God or supreme being" – or else be reclassified to a higher security risk with negative effects on parole eligibility. 95 F.3d at 474, 480. By contrast, nothing in the record suggests that Plaintiff would suffer any consequences from not listening to the Christian sermons occurring in his day room. In fact, Sonya Troutt made it explicitly clear that the preachers are not to "impose on inmates who are not interested." (Stmt. at 5). To the extent that Plaintiff believes his use of the *grievance system*, rather than his refusal to participate in Christian sermons, could lead to punishment in the form of reclassification, his claim sounds in retaliation rather than as an Establishment Clause claim. Plaintiff's reliance on *Kerr* is misplaced.

D.  Plaintiff's Retaliation Claims

The Sixth Circuit has laid out a three necessary elements in order for a plaintiff to state a retaliation claim under the First Amendment. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1997). First, the plaintiff must have engaged in constitutionally protected conduct; second, an adverse action must have been taken against the plaintiff; third, the adverse action must have been motivated, at least in part, by the plaintiff's protected conduct. *Id.* While this formulation was intended to describe retaliation claims generally, it has often been cited as a test in cases dealing with retaliation against prisoners for exercising their constitutional rights to use the prison grievance system and the court system for civil rights claims. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

As Plaintiff's claim fails at step two, the Court will limit its analysis to that step. In general, an adverse action is one that would "deter a person of ordinary firmness" from exercising his constitutionally protected rights. *Thaddeus-X,* 175 F.3d at 396 (*citing Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Other courts have relaxed the standard, holding that

actions that are merely "*capable* of deterring a person of ordinary firmness," regardless of *actual* deterrence, are to be considered adverse. *Hill*, 630 F.3d at 472 (*citing Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (emphasis in original). Even the *threat* of an adverse action might satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *See Pasley v. Conerly*, 345 Fed. Appx. 981, 986 (6th Cir. 2009) (emphasis added). Restricting a prisoner's housing by placing him in administrative segregation could constitute an adverse action. *Dunham-Bey v. Holden*, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999).

Taking Plaintiff's complaint as factually true, defendants Troutt and Babbitt threatened to move Plaintiff to administrative segregation on December 14, 2010 after he filed his second grievance related to Mr. Wade's sermons. (Stmt. at 6). While this type of threat might constitute an adverse action under the *Thaddeus-X* test, it clearly did not deter Plaintiff from exercising his right to file another grievance, as he filed a third complaint that same day. (*Id.*). While actual deterrence is not required in determining an adverse action, an isolated threat to move an inmate to administrative segregation, without more, does not rise to the level of an action which deters a person of ordinary firmness. *Hill*, 630 F.3d at 472. Furthermore, the threat of an actual move to administrative segregation is a moot issue, as Plaintiff was transferred to the West Tennessee State Penitentiary some five months ago. (Docket Entry 7). Without the continued threat of actual administrative segregation at a jail he no longer occupies, Plaintiff is free to file all the grievances he desires without fear of retaliation.

Plaintiff relies on the Eleventh Circuit decision *Boxer X v. Harris* in support of his retaliation claim and its holding that a prisoner stated a First Amendment claim when punished

9

for using the prison's grievance system. 437 F.3d 1107, 1107 (11th Cir. 2006). Once again, factual differences between the case at bar and the Plaintiff's supporting case defeat this comparison. In *Boxer X*, the plaintiff prisoner was *actually* punished for using the prison grievance system in the form of disciplinary reports without the opportunity to challenge his accuser. *Id.* at 1109. By contrast, in this case, Plaintiff was never actually punished, and his transfer precluded a threat of punishment from ever being carried out. Plaintiff's reliance on *Boxer X* is thereby misplaced.

### III. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss be **GRANTED** and that this action be **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 9th day of August, 2011.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge